UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

300 WEST END AVENUE ASSOCIATES CORP.,
GENERAL THEOLOGICAL SEMINARY OF
THE PROTESTANT EPISCOPAL CHURCH IN
THE UNITED STATES, and 293-299
KNICKERBOCKER LLC

                                        Plaintiffs,

                v.

ENGIE POWER & GAS, LLC, f/k/a
PLYMOUTH ROCK ENERGY, LLC,

                                        Defendant.

**MEMORANDUM AND ORDER**

22-CV-3664 (LDH) (SIL)

LASHANN DEARCY HALL, United States District Judge:

300 West End Ave Associates Corp. ("300 West End"), General Theological Seminary of the Protestant Episcopal Church in the United States ("GTS"), and 293-299 Knickerbocker LLC ("Knickerbocker" and together with 300 West End and GTS, "Plaintiffs"), on behalf of themselves and others similarly situated, bring the instant action against Engie Power & Gas, LLC f/k/a Plymouth Rock Energy, LLC ("Defendant"), asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, violations of New York General Business Law ("GBL") § 349, and unjust enrichment. Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety.

## BACKGROUND[1]

An energy service company ("ESCO") is essentially a broker. (Second Am. Compl. ("Am. Compl.") ¶ 20, ECF No. 27.) They neither produce nor deliver gas but buy energy from

---

[1] The facts—taken from the pleadings, as well as documents incorporated therein and attached thereto—are assumed to be true for purposes of this Memorandum and Order.

producers and re-sell it to customers.  (*Id.*)  ESCOs differ from traditional utility providers because they do not have to file or seek approval from state utility regulators for energy rates they charge consumers.  (*Id.* ¶ 21.)  According to Plaintiffs, ESCOs attract customers with a "fixed supply charge that is comparable to, or below, the traditional local utility rate," but after the specified term ends, they charge a variable rate that is higher than the initial rate offering.  (*Id.* ¶¶ 23–24.)  Moreover, according to the complaint, ESCOs provides vague details, if any, concerning how the variable rate is calculated, leaving customers, like Plaintiffs, to pay "outrageously high energy rates detached from market conditions that no reasonable customer would ever agree to."  (*Id.* ¶¶ 25–26.)  And, ESCOs do not provide customers notice that they have been shifted to a variable month-to-month rate.  (*Id.* ¶ 26.)  Various state legislatures, including New York, have enacted safeguards to protect against predatory ESCOs.  (*Id.* ¶ 27.)  In 2011, New York enacted the ESCO Bill of Rights, N.Y. GBL § 349-d, which provides, in part "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified."  (*Id.* ¶¶ 27–28.)  The ESCO Bill of Rights also provides that "any contract for energy services which does not comply with the applicable provisions of this section shall be void and unenforceable as contrary to public policy."  (*Id.* ¶ 29 (citing N.Y. GBL § 349-d(8)).)

Defendant is an ESCO that supplies electricity and/or natural gas services to customers in Illinois, Maryland, New Jersey, New York, Ohio, and Pennsylvania.  (*Id.* ¶¶ 2, 11–12.)  Plaintiff 300 West End is a residential housing cooperative located at 300 West End Avenue New York, New York 10023.  (*Id.* ¶ 44.)  On or around July 14, 2016, Defendant and 300 West End entered an agreement for Defendant to supply gas services to 300 West End.  (*Id.* ¶ 45.)  Pursuant to the agreement, Defendant provided gas service to 300 West End beginning on August 1, 2016, until

on or about April 28, 2020.  (*Id.*)  Plaintiff GTS is a theological seminary located at 440 West 21st Street, New York, New York 10011.  (*Id.* ¶ 56.)  In 2013, GTS entered a contract with Defendant, pursuant to which Defendant supplied gas service to GTS until about May 11, 2022. (*Id.* ¶ 57.)  Plaintiff Knickerbocker, located at 1946 Coney Island Avenue, Brooklyn, New York 11223, entered a contract with Defendant for gas service from May 31, 2012, until about August 31, 2022.  (*Id.* ¶¶ 66–67; *see* Pls.' Mem. L. Opp. Mot. Dis. ("Pls.' Mem.") at 3 n.1.)

Defendant provides all customers, including 300 West End, GTS, and Knickerbocker, with a uniform contract comprised of "materially the same terms."  (Am. Compl. ¶ 48.)  Each contract contains a "Customer Disclosure Statement," which is organized in a table and designed to summarize key provisions of the contract.  (*Id.* ¶¶ 30–31.)  The first row of the table provides three potential price structures, including "fixed, NYMEX+, and variable rate per therm/CCF." (*Id.* ¶¶ 30, 32.)  The sixth row, labeled "Provisions for renewal of the agreement," states that "[u]pon completion of the Initial Term, this Agreement will automatically renew on a month to month basis at the same terms[.]"  (*Id.* ¶¶ 30, 35.)  Following, the "General Terms and Conditions" section states "[u]pon completion of the Initial Term, this Agreement will automatically renew on a month-to-month basis at the same terms, except the rate will be a variable monthly rate[.]"  (*Id.* ¶¶ 30 37.)  Plaintiffs each have had their contracts converted to variable rate contracts with higher rates.  300 West End has been charged double the fixed rate price.  (*Id.* ¶ 53.)  GTS and Knickerbocker were each charged a rate that is "significantly higher" than the original fixed rate.  (*Id.* ¶ 63.)  And, Defendant charged a variable rate that is "significantly higher" than the fixed rate in the initial term or the rates offered through traditional utilities.  (*Id.* ¶ 41.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.*  While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

### I.      BREACH OF CONTRACT

To state a claim for breach of contract under New York Law, the complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. N.Y.*, 375 F.3d 168 (2d Cir. 2004) (internal citation and quotation marks omitted).  Defendant urges the Court to dismiss Plaintiffs' breach of contract claim on the grounds that Plaintiffs have failed to allege that Defendant's conduct amounted to a breach. (Def.'s Mem. L. Supp. Mot. Dis. ("Def.'s Mem.") at 7–11.)  Defendant is correct.

According to the complaint, Defendant breached its obligations under the Gas Sales Agreement because Defendant failed to "charge a rate on a month-to-month basis at the same

rate as the initial term," and instead charged a variable rate.  (Am. Compl. ¶ 90.)  Except, as Defendant rightly argues, the Gas Sales Agreement expressly provided for the conversion from the fixed rate to a variable rate at the conclusion of the initial term.  That is, Term 2 of the Terms and Conditions provision provides that:  "Upon completion of the Initial Term, this Agreement will automatically renew on a month to month basis at the same term, except the rate will be a variable monthly rate …"  (Am. Compl., Ex. A, Natural Gas Sales Agreement ("Gas Sales Agreement") ¶ 2, ECF No. 27-1.)  Nothing could be clearer.

Nonetheless, in an effort to avoid dismissal, Plaintiffs argue that the Gas Sales Agreement is, at a minimum, ambiguous and as such Defendant's motion should be denied. (Pls.' Mem. at 9.)  It is true that where contract terms are ambiguous, a court "has insufficient data to dismiss a complaint for failure to state a claim."  *Eternity Global Master Fund Ltd.*, 375 F.3d at 178.  However, Term 2 simply does not lack the requisite definiteness to be deemed ambiguous.  Perhaps in recognition of that truism, Plaintiff directs the Court to the Customer Disclosure Statement, which like Term 2, states that "upon completion of the initial term, the Agreement will automatically renew on a month-to-month basis on the same terms."  (Am. Compl. ¶ 35.)  Absent from the Customer Disclosure Statement, however, is any reference to the exception for the conversion to the variable rate.  The exclusion of the exception in the Customer Disclosure Statement, according to Plaintiffs, renders the Customer Disclosure Statement and the General Terms and Conditions in direct conflict with each other rendering the agreement ambiguous.  Not so.

A contract is unambiguous, where its terms have "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion."  *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.

1990) (internal quotation marks omitted).  Conversely, "a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted).  Importantly, contracts are to be construed to give all provisions force and effect.  *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956). And, of particular relevance here, specific provisions govern over the general.  *See Huen N.Y., Inc. v. Bd. of Educ. Clinton Cent. Sch. Dist.*, 67 A.D.3d 1337, 1338 (N.Y. App. Div. 2009) ("[I]t is a well-established principle of contract interpretation that specific provisions concerning an issue are controlling over general provisions[.]").  An application of these bedrock principles of contract interpretation confirms the Court's conclusion that the contract is not ambiguous and indeed Term 2 (the specific provision) and the Customer Disclosure Statement (the general provision) can be read together.  Or as Defendant puts it:  "When the Customer Service Statement refers to renewal 'on the same terms,' it is referring to the 'Terms and Conditions' immediately below it – including the unambiguous Term 2."  (Def.'s Mem. at 9.)

Notably, this case is indistinguishable from *Congregation Yetev Lev D'Satmar Inc. v. Engie Power & Gas*, where the court analyzed an electricity service contract with strikingly similar terms to the contract at issue here.  No. 22-CV-04844 (NRM) (RER), 2023 WL 4674273, at *3 (E.D.N.Y. July 21, 2023).  There, the plaintiff argued that the defendant breached the contract when it failed to charge a fixed rate upon the conclusion of the initial term.  *Id.*  The Customer Disclosure Statement provided for a price that was "Fixed, Hourly, LBMP, or variable rate per kWh" and "No early termination fee for variable service."  *Id.* at *4.  And, Term 2 of the

6

General Terms and Conditions provided that "Upon competition of the Initial Term, this Agreement will automatically renew on a month-to-month basis at a variable monthly rate..." *Id.* The plaintiff also argued that the provision of a variable rate was in direct conflict with other terms of the agreement, specifically pointing to a provision stating that "the price for all electricity sold under this Agreement as specified above, shall be a fixed price per kWh as agreed to above . . . ." *Id.* There, the court held that the contract terms, when read in the context of the entire agreement, were unambiguous and that there was "no reasonable basis for a difference of opinion as to whether the Agreement discloses the existence of a variable rate." *Id.* (internal quotation marks omitted). This Court reaches the same conclusion.[2]

## II.     IMPLIED COVENANT OF GOOD FAITH

Even if Defendant's conduct did not amount to a breach of contract, Plaintiffs maintain that Defendant nonetheless breached the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 93–99.) Seemingly reflexively, Defendant argues that the implied covenant of fair dealing claim is duplicative of the breach of contract claim and should therefore be dismissed. (Def.'s Mem. at 14.) Not so. Indeed, Defendant's argument in this regard reveals an apparent misapprehension by Defendant of the contours of each claim. The breach of contract claim is premised upon Defendant's failure, upon the conclusion of the initial term, to charge Plaintiffs the same fixed rate. (Am. Compl. ¶ 90.) By contrast, the good faith and fair dealing claim is premised upon the excessive nature of the variable rate Plaintiffs were charged. (Am. Compl. ¶ 97.) That is, according to the complaint, "Defendant breached the implied covenant of good

---

[2] Defendant also argues that Plaintiffs' breach of contract claim is untimely because it was brought outside of the Uniform Commercial Code's four-year statute of limitations. (Def.'s Mem. at 11–12.) Plaintiffs respond that the breach of contract claim is not time barred because the agreement is for a service, and not a good, therefore the statute of limitations is governed under NY CPLR §213. (Pls.' Mem. at 10–14.) Defendant has not provided the Court with sufficient information to decide whether the Court should construe the agreement as one for a good, and not a service. In any event, because the Court finds that Plaintiffs' claim for breach of contract otherwise fails, it declines to reach whether the claims are time-barred.

faith and fair dealing by unreasonably exercising its rate-setting discretion to price gouge and frustrate Plaintiffs' . . . reasonable expectations that Defendant's variable energy rate would be commensurate with market conditions." (*Id.* ¶ 98.) The claims are not duplicative. *Stanley v. Direct Energy Servs. LLC*, 466 F. Supp. 3d 415, 4429 (S.D.N.Y. 2020) (allowing good faith and fair dealing claim to survive dismissal where it was premised on variable rate charges that were "inconsistent with [Plaintiff's] reasonable expectations").

Defendant's argument that the breach of the implied covenant of good faith and fair dealing is insufficiently pleaded is similarly unavailing. According to Defendant, Plaintiffs have not alleged any specific conduct on behalf of Defendant that would give rise to the claim. (Def.'s Mem. at 13.) But Plaintiffs plainly do. Plaintiffs allege that upon completion of the initial term, Defendant began charging a variable rate inconsistent with Plaintiffs reasonable expectation that any variable rate would be commensurate with market conditions. (Am. Compl. ¶ 97.) Of course, as Defendant argues, Plaintiffs may not use an implied covenant of good faith and fair dealing to rewrite the Gas Sales Agreement to include an implied obligation that is inconsistent with the other terms of the contractual relationship. (Def.'s Mem at 13.) But all contracts "imply a covenant of good faith and fair dealing the course of [its] performance." *Bell v. Gateway Energy Servs. Corp.*, 2018 WL 4682424, at *11 (Sup. Ct. N.Y. Sept. 13, 2018) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). In other words, "[w]hile the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promise would be justified in understanding were included." *Id.* (internal citations and quotation marks omitted).

At this stage, Plaintiffs have sufficiently pleaded that they reasonably expected the rate to be determined based upon market conditions, or at a rate less than double their initial rate, and that Defendant's excessive charges contravened that expectation.  Defendant's motion to dismiss as to Plaintiff's claim for breach of the implied covenant of good faith is denied.

### III.    NEW YORK GBL §349

New York GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  *See Melendez v. ONE Brands*, LLC, No. 18-cv-6650, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) (citing N.Y. GBL § 349).  "To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks and citation omitted).  Section 349-d(7) requires ESCOs to ensure that "all variable charges [] be clearly and conspicuously identified."  Of particular relevance here, any § 349 claim must be brought within three years of the alleged violation.  *See Gaidon v. Guardian Life Ins. Co. of Am.,* 750 N.E.2d 1078, 1984 (N.Y. 2001).   Plaintiffs complain that Defendant ran afoul of § 349 by:

> [1] Failing to adequately disclose that despite the language of its contracts, Defendant's energy rates will not renew at the same rates upon the conclusion of the Initial Term and instead be a variable rate.  [2] Failing to adequately disclose that Defendant's variable energy rates are consistently and significantly higher than the rates a customer's existing utility charges.  [3] Failing to adequately disclose that customers paying Defendant's variable energy rates receive no material added benefit at a dramatically higher price than if the customer were to stay with the local utility.  [4] Failing to provide customers adequate notice of the variable rates it would charge.  [5] Failing to adequately disclose the variable rate methodology Defendant used to calculate its variable rates to enable customer to potentially compare prices.  [6] Failing to adequately disclose the conditions that must be present for a variable rate customer to save money compared to what the customer's local utility would have charged.  [7] Failing to adequately disclose that it makes substantially higher profits on its variable rate customers than its fixed rate

customers even though there is no material difference between the costs Defendant incurs for its fixed rate customers and those it incurs for its variable rate customers.

(Am. Compl. ¶ 105.)  As Defendant argues, Plaintiffs §359 claims are untimely and should be dismissed accordingly.  (Def.'s Mem. at 15–16.)  Each of Plaintiffs' Section 349 allegations relates to an alleged failure to disclose information concerning the migration from a fixed rate to a variable rate.  (*Id*. at 16.)  And, because each Plaintiff was switched from fixed to variable rates between 2014 and 2017, any claim filed after 2020 is untimely.  (*Id.*)  Plaintiffs respond that their claims are saved by the continuing wrong doctrine.  (Pls.' Mem. at 19–20.)  Specifically, "[w]here a NYGBL § 349 claim is based on a series of allegedly deceptive acts, … the 'continuing violations doctrine' applies and 'effectively tolls the limitations period until the date of the commission of the last wrongful act."  *Stanley*, 466 F. Supp. 3d at 432 (quoting *Brietman v. Xerox Educ. Servs.,* LLC, No. 12-cv-6583, 2013 WL 5420532 at *4 (S.D.N.Y. Sept. 27, 2013)).

Plaintiffs direct the Court to three cases in support of their argument that the continuing violation doctrine applies because each payment constituted an individual wrongful act.  (Pls.' Mem. at 20.)  Plaintiffs' reliance on *Stanley* is misplaced.  In *Stanley v. Direct Energy Servs. LLC*, the court determined that each bill was a discrete act that contradicted an affirmative statement such that the claims concerning bills within the limitations period were timely.  *See* 466 F. Supp. 3d at 432.  Notably, however, the alleged misrepresentation at issue in *Stanley* is that defendant would provide a "Market Pricing Type" through a monthly variable rate methodology that suggested to customers its variable rates would be correlated to some measure of market rates, which could mean supply costs or other ESCO rates.  *Id*. at 434.  Here, the alleged omissions concern Defendant's "failure to disclose."  (Pls.' Mem. at 20–21.)  Unlike

10

*Stanley*, Plaintiffs do not argue the charge was misleading based on a reasonable expectation that Plaintiffs would be charged a market rate.  As Defendant correctly argues, such a failure to disclose occurred at the time of rate conversion and did not continue.  (Def.'s Mem. at 16.)

Plaintiffs' reliance on *Ring* and *Breitman*, fails for similar reasons.  In *Breitman v. Xerox Educ. Servs. LLC*, the plaintiff alleged that her student loan payments were misapplied and that she repeatedly informed Defendant of her desire to have payments applied in a different manner. No. 12-CIV-6583, 2013 WL 5420532, at *4 (S.D.N.Y. Sept. 27, 2013) (finding the continuing violation doctrine tolls the statute of limitations to the last of the plaintiff's misapplied prepayments).  Here, Plaintiffs do not allege that they requested a fixed rate after being switched to a variable rate, nor do they allege any request for a different rate.  Instead, and again, each of Plaintiffs' allegations concerns Defendant's "fail[ure] to disclose" details rated to its variable pricing.  (Pls.' Mem. at 20–21.)

In *Ring v. AXA Financial, Inc.*, the plaintiff was incorrectly billed and paid premiums for an expired policy.  No. 0111869/2004, 2008 WL 692564, at *3 (N.Y. Sup. Ct. Feb. 06, 2008) (applying continuing wrong doctrine "because [plaintiff] was billed for $98 each quarter, without any itemization, and even though her daughter no longer qualified for insurance under the rider.")  Once again, Plaintiffs do not allege that their rates were billed to them erroneously, only that Defendant "fail[ed] to disclose" details related to its variable pricing.  (Pls.' Mem. at 20–21.) In any event, each of these cases pre-dates the Second Circuit's decision in *Miller v. Metro. Life Ins. Co.*, which held that plaintiffs could not apply the continuing violation doctrine where Plaintiffs were erroneously designated as smokers and paid a higher insurance premium.  979 F.3d 118, 122 (2d Cir. 2020).  The *Miller* court noted that "New York Courts have explained that tolling based on the [continuing violation doctrine] may only be predicated on continuing

unlawful acts and not on the continuing effects of earlier unlawful conduct." *Id*. (internal citations and quotations omitted). Here, Plaintiffs seek to recover for Defendant's failures to disclose. (Pls.' Mem. at 20–21.) However, such acts occurred, at best, at the time Plaintiffs paid or were switched to variable rates. Plaintiffs' claims, like in *Miller*, are a result of a "continuing effect" of the alleged unlawful conduct. (Pls.' Mem. at 24–25.) Accordingly, Plaintiffs' §349 claims must fail.

## IV.   UNJUST ENRICHMENT

Defendant argues that Plaintiffs' unjust enrichment claim fails because there is a valid agreement between the parties, and because Plaintiffs already assert claims under Sections 349 and 349-d. *(Id*.) Plaintiffs consent to dismissing the unjust enrichment claim. Accordingly, Plaintiff claims for unjust enrichment is DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' claims for breach of contract and violations of New York General Business Law sections 349 and 349(d)(7) are dismissed as time barred. With Plaintiffs' consent, Plaintiffs' claim for unjust enrichment is dismissed. Defendant's motion to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing claim is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
        April 15, 2024

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge